Axel v. Field Motorcars The issue in this case is whether Fields Motorcars had to pay Scott Axel any amount for the work that he did that benefited them. And there's no dispute in this case that Scott Axel did work that benefited Fields. The key question here is did that work, was that work done as an employee of Fields Motorcars? Now, we know from statements made in the summary judgment hearing that took place in the district court that some of the alternatives to an employee are off the table. It was twice said by Fields Counsel that Mr. Axel was not an intern or a trainee or a volunteer. In the briefing before this court, everyone agrees he's not an independent contractor. That leaves one alternative, which is that he's not the employee of Fields. He's the employee of Michael Axel's father. This argument before by Fields in district court. That leads us to looking at the joint employer analysis, which starts with the regulation that governs joint employment. Can he be simultaneously an employee of his father and a trainee with respect to Fields Motorcars? No. He can't be an employee and a trainee. Those are opposite things. And the argument before the district court was that Michael Axel should have been compensating him. Trainees don't get compensated. That's why the FLSA doesn't apply to trainees. The statement made on the record to the court was that Mr. Axel wasn't entitled to compensation. The dispute was who should have compensated him. And so he was an employee. It's just a question, was it Michael Axel, was it Fields, or was it both? And looking at the facts as were construed by Fields in the district court, he's a joint employee. And we start with that regulation. It's 29 CFR 791-2, which says that in most cases where one employer controls the other alleged employer, they both directly or indirectly control the employee, and you have a joint employment situation. That's what we have here. Michael Axel is an employee, undisputedly. Michael Axel is an employee of Fields. And so he is controlled by Fields. Classic master-servant relationship there. And so that's where the analysis should end, right there. There's a joint employment relationship here because Michael Axel is an employee. That's what the Fifth Circuit has said in those two cases we cited about the AWPA, which is governed by the same principles of joint employment. It's what the Department of Labor said in their memo that before it was withdrawn, they reached the same conclusion there. And it's what the regulation said. But if you move beyond that to the economic realities test, you get the same result. Looking at just the first two elements there, supervision and control, we have numerous facts in the record that there was supervision by Fields of Scott Axel. You've got the general manager giving him instructions, which is reprimanding him about how much money he's found on eBay and telling him to spend less. You've got the wholesale manager telling him to do research and prepare graphs. You've got Lance Lightsey, who's another manager, giving him the trade rev assignments that were Lance's job. And, of course, above all this stuff, you have— Didn't he agree to work there without any expectation of compensation, which would suggest he was not an employee? When he first started, it was with the expectation that he would someday take over his father's position when he retired. But in the meantime, he would be paid nothing. That was his testimony, right? There was not an expectation there to be paid. How could he think he's an employee of them then? Sorry, what? How could he think he's an employee of Field Motor Cars then? Well, he was expecting future compensation. And what he got was nothing. No, he was expecting a future job for work that he would then perform as an employee, not for past work. That's absolutely true. But also what we have is a shift from the beginning where there was the discussion, let's have Sky Asselt come in and shadow his father, follow him around, learn what he does. And what we see in the record is that evolves into Sky Asselt is now working for other employees. He's doing way more than just learning his father's job. One of the things he's doing is he's posting these cars to the Internet. And even if we say the first few times it was training, he's doing this for a year and a half, and it's data entry and it's work. Well, why isn't your argument it doesn't really matter what he agreed to and what he expected? You can't agree to let the employer violate the FLSA. I mean, suppose somebody had said to a future employee, we can hire you, but we can't afford to pay you overtime. And the guy says, that's okay, I don't want overtime. Just give me the basic. I agree. I insist on it. Please. With my record, I need the job. The employee says, okay, that's a violation. And that's absolutely the law, that an employee can't. So why isn't your argument it really doesn't matter what he expected and what he agreed to? Well, if I didn't articulate that well in my brief, that should be an argument. It was certainly made in the district court repeatedly, and there's law that was cited to it. Now, if we get into the trainee analysis, that's the first factor. Was he expecting compensation? So it's an issue if you get there. I don't think we should get there. I think joint employer analysis is what we look at, though. How long did he do the work for Tom Shade that you emphasize in your brief? Researching vehicles, preparing graphs, sometimes helping transport vehicles. I don't think there's a quantification in there, but that was the more minor parts of his work. He did that, but he does spend most of his time posting cars, going to auctions. Most of it, but not all of it. He did some for Shade. And did his father normally do that work with Shade? I mean, how does the work he did for Shade, Tim Shade, relate to his father's work? It doesn't look like it did. It looks like he's doing work independently for fields. And this is part of our alternative argument, is even if we're saying that the work he's doing for his father somehow is not employment by fields, he's doing this other work, and the appellations still apply. Even if he's a part-time employee for two hours for the whole thing, he's still entitled to the work he's doing for fields. Could somebody be a trainee for a while, or arguably a trainee, and then morphs into an employee for a later part of his service? Absolutely, and I think that's what happened here. All right, so when did it morph? When did it cross the line? When did he become a walking violation of the FLSA as opposed to a trainee? Well, the easy ones are when he's not doing work for his father. Well, I'm talking about chronological morphing as opposed to spots. And I think that gets into a damages issue that would have to be a jury question. It would be what the jury would be charged with doing, is saying when is he no longer getting any training from this. But there has to be times at which the jury couldn't reasonably find that he was an employee. Right. According to you, there are times in which the jury would certainly be able to find that he was an employee. So my question is, approximately, I know you can't give a date and hour, but approximately when did that occur? And time-wise, I mean, I would think it would be a few months into it, realistically. I mean, when he started doing what? Repetitively putting up trade rev posts that he had been trained on, that he knew how to do. And at that point, Lance Lightsey was no longer supervising him. If he's not being supervised, he's got it. And so he's not doing anything at that point that he's learning. He's just doing work for the company. And so at that point, he's no longer being trained. And at that point, he's also doing work for other people, not for his father. And he's performing functions that his father didn't perform at some point. That's right. And if there's a fact question that on some things, maybe this is something that's retrained, that's for a jury to decide. Here, we know that there was some work that was employment for fields, which means that summary judgment wasn't appropriate for fields. Summary judgment on liability only is appropriate for Mr. Axel. And the jury decides damages, which is how many hours of these were actually spent. So you could theoretically have summary judgment for a certain period of time where you can instruct the jury. If he wasn't an employee up to this day, afterwards, it's up to you to determine here are the factors you consider. I think, as I would envision, it would be a jury instruction that tells them that they should not award any time spent training. And to find what that is, I think here possibly could be stipulated, too. I mean, there was a time here where there was absolutely intention to train, and there was a time when he's absolutely not doing what he started off doing. It evolved, and he should be compensated for what he evolved into. Could the son just be the employee of the father and therefore the father's on the hook today? So with the employee of the father, I don't see it here under the regulation because, I mean, he's not doing work. If he's out there mowing his father's lawn, sure, but he's doing fields work for his father, and Michael Axel is an employee of fields. And so when you just look at it, I mean, the fact that his father is somewhat of a red herring, is an employee of fields supervising his own employee, if you can take the facts as they've construed it, doing fields work. Regulation says when you control the other intermediary employer, the employee is an employee of both. So I don't see a scenario here where he's an employee of just his father. I see scenarios here where he's an employee of just fields. Certainly for work that has nothing to do with Michael Axel, he's an employee of just fields. But for the work that's for Mike Axel, I think the joint employment analysis is appropriate, particularly because we're asking that you remand with summary judgment. In our case, it was Michael Axel making during this period. He was making a significant amount. How much? I think it was probably $300,000 or $400,000 a year. A year. Yeah. I believe it was that much. And the year that he was terminated, he was doing very well. He just got there, and so, of course, fields was too. They were taking half or 90% of every piece of commission. So that case is just – if you saw the note put down there, that case was tried to jury verdict recently for the wrongful termination of Michael Axel. What did the jury – I'm just curious, since we're here. What did the jury verdict say? They concluded that he was wrongfully terminated. They worried the verdict and the damages. Last week, the judge ordered the parties that Michael Axel would return to work next Wednesday. He reinstated. Is the sun going to fall tomorrow? Well, she said he'd be reinstated under exactly the same terms as he was terminated. That's not a question for me today, though. That's not an issue for this panel anyway. All right. Mr. Trahan. Good morning. May it please the court. My name is Ashwin Trahan. I represent the Appalachian Fields Motor Cars of Florida. You don't contest that Michael Axel is an employee of Field Motors? That Michael Axel? Yeah. Absolutely. No. So you contest that Scott Axel is an employee of Michael Axel, or you contend that?  All right. What does that mean? Well, there's no law that I'm aware of that forecloses a W-2 employee from having his own employee. The court in this entire employment relationship, the scope of employment is defined by the employer's obligations to his employer. I didn't follow that question. So Scott's employment and the scope of employment would be defined entirely as a subset of the father's employment obligations to his employer. Well, in this case, it would have been defined by whatever it was that Mike Axel wanted his son to do, which is what happened. The understanding between Michael and Fields was that what he was going to do was help Michael with his work at Fields. Shadowing. I mean, there's nothing to suggest that it was anything else like mowing his lawn. Correct. Correct. So how could that be? How could he be Michael's employee in that context? Well, I guess I don't understand the question. He can't be, can he? I mean, the employee of the employer can't have an employee whose entire work is defined by the employer's work for his employer. I would just point back to the Mednick case cited in the briefs. In that case, the issue was slightly different, but the employee was contending. The employee plaintiff was alleging that he was an employee under the FASA. He himself had his own employees, and the employer argued, no, plaintiff, you're not. Well, that's a different issue now. That's a different issue. But you don't contend that Michael's an independent contractor. We don't. If he had been, he could have had an employee, and Fields would owe the employee of the independent contractor nothing. Correct. What I'm saying is that whether he's an employee or an independent contractor under he being Michael Axel, he could still have his own employee. I'm not aware of any authority that would prohibit him from having his own employee. But in either event, whether or not Scott is an employee of Michael, the district court and this court is still analyzing as a matter of law whether Scott is an employee of Fields. The administrator's interpretation on which the appellant relies, first of all, not binding on this court, second of all. Third, the section that is relied upon most heavily is about three or four sentences, and I believe to be poorly reasoned and inconsistent with 11th Circuit precedent. That is what I would call the transitive property of employment. If A employs B and B employs C, then A employs C. This court's precedent in joint employment is very clear that the putative employee, his relationship with the putative employer is examined irrespective of any other relationship. Didn't Scott attend meetings where Michael was not present? I don't believe he attended meetings where Michael wasn't present. I believe he attended the morning meetings where Michael was present. Didn't he do work for Sean that his father didn't do? He was directed by folks at Fields other than Michael to do certain tasks on behalf of Fields. There are some of those facts in the record, yes. And some of those tasks were not tasks that Michael did? Some of them, correct. What say you about that? I'd say that the test for employment is a balancing test, and those are among the many factors you look at when examining whether an individual is an employee of an employer under the FLSA. Sounds like a factual determination to me for the jury. Well, both parties, I would say, both parties move for summary judgment. That means nothing to me. I always do that. Not necessarily, but in any event, I won't quibble with that. Frequently occurs. Let's just put it that way. Sometimes I suspect it depends on how deep the client's pocket is, but I'm not suggesting. Well, of course, y'all both moved here, but you could have, the law would be perfectly rational to find that he was an employee at some times and not others, wouldn't it? I mean, suppose that every time he's just following the father around, he's not an employee of Fields. But when he's off doing other things for other people that his father doesn't do, father may not even be there. He could be an employee, couldn't he? It would depend whether, I would go back to the way the district court analyzed it, which was, is he learning? Oh, so no matter what he does for somebody, so long as he's learning. I mean, learning is a lifetime process, so if you get somebody into a big business and they just keep constantly rotating around, he's always learning. You don't have to pay him anything. Well, again, it's multifactorial, so it's not— It's like a Dury issue to me if it's multifactorial. Put it this way. Suppose the training aspect and the extra or ultra outside training aspects were linearly arranged in time, that for the first six months he worked for a place he was just doing training or being trained by his father, and then for the last four months he was doing things his father didn't do. Exclusively? Exclusively. Now, you could have a perfectly rational verdict and determination and judgment that he was an employee the last four months but not the first six, couldn't you? Depending on the other facts. I'm just giving you the facts. After six months, they started, here, this is your responsibility. You sit here every day and you monitor this and you report that and you fill out this, and within the bounds of these parameters, you bid, and that's not something his father did. The last four months, that's what he's done. He'd be an employee for those, wouldn't he? I don't know that I could dispute that with you. Okay. All right. So the fact that you can be a trainee for a number of months and then become an employee, if that's true, and I believe it's self-evident, couldn't you also be an employee at some times and a trainee at others, depending on the functions you would do? That, I think, would be less clear, and that, I think, would also be something that you can sign it up. I mean, the first month he's trained, and the second month he's doing rote work that doesn't require any training. It's just work. The third month, he's training on something else. The fourth month. Yeah, under that hypothetical. Why can't you do it by days and weeks? Why can't you submit that to the jury and say the burden's on the plaintiff? The plaintiff has to prove when he was not a trainee, when he was an employee, based on the work he did. And if you've got a doubt about it, or if he hasn't proven it by preponderance, the plaintiff loses. But if he's proven it by preponderance, go back there, do your magic, come back with a verdict and a damage amount. Well, the district court looked at all the evidence in the record. They applied the Schuman analysis, a modified version. It seemed to me that the district court looked at it macro, as opposed to in segments. Part of the possibility that at some times he was a trainee and at other times he was an employee. The only thing we really have to decide is whether the district court earned in granting summary judgment, right? I'm sorry? The only thing we have to decide is whether the district court earned in granting summary judgment. It certainly sounds to me like there are facts here that would suggest that at least during some periods he was an employee. But then a reasonable fact finder could sound fine. Well, you know, if I'm not sure that the language in Schuman that talks about the painting of the house is really applicable and that the inference deriving from that that we could define this in that vein is really accurate because the work that he did for TradeRev, for instance, is work that involved wholesale sales. TradeRev was an online alternative to auctions, so within the purview of his father's work. I'm not sure purview counts as opposed to under the supervision and training of his father. Purview of the work sounds like. I mean, suppose they had three people doing his father's work and two other people and one of them leaves and they put the son in. That's within the purview of his father's work. Sure, but it's not so bright line that every single thing that he does needs to be under the direct supervision of his father. Otherwise, he's an employee of Fields. If you look at the Layton case. It can't be the other way either. Everything he does has to be employment and not under the purview of his father or there's a verdict for the plaintiffs. I'm sorry, for Fields. I mean, it just seems to me like the mess that y'all created and the juries are, as somebody said, the doctors of death, cleaners of messes. And I just, I can't imagine if we had a perfect knowledge of what was done each day or how long each day. It would work out 100% training. And nor does it appear that it would work out 100% employee and non-training. So, I don't understand why you win because it's a mixed situation. I would just say that the courts looking at joint employment have been willing to grant summary judgment even though there is, what you would say, a mixed record. It's not that, you know, nothing in this kind of, this is a unique situation, but nothing in, I mean, to say the least it's unique. But you're never going to have 100% of anything. But in the Layton case, summary judgment was found even though there were factors that favored a finding of employment. And here, there are incidences, flotsam and jetsam, of employment. But if you apply any of the three tests that are used within the circuit and you go factor by factor, it just doesn't compute for the plaintiff. That's our position. Okay, thank you. Mr. Herman, three minutes. Judge, you said that the law would be perfectly rational. I don't know about perfectly. Well, I would just say that the law is rational. This court in Shuman said it's not all or nothing in the FLSA. And that's exactly the relief that we're all looking at. It's not doing all or nothing here. Not all waiting for the plaintiff or the defendant in the case. There was a shift over time here, and a shift, and we don't have to decide that when we do it. I mean, what the district court decided was that it was all for the employer. And if we say that there are genuine issues of material fact, then that was an error. You have to sort out the rest. Right, and that would be having the jury quantify what was trading and what was not. Yeah, if then you don't want to argue about, well, for this period he was a trainee or this period he was an employee, or have alternative arguments about all that. All that can be sorted in the district. We shouldn't be sorting that out here. I don't think it's the court that sorted it out. Say the district court got it wrong. It's the district court's business. And if we do decide to send it back, but I would hope there wouldn't be tell us what days interrogatory. No, that would be a mistake. But this has been helpful. It really has on both sides. And I can't say that about all oral arguments. So we will take that case under submission. Stan didn't raise that. Okay.